IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| TERRI J. DEWEESE, | * | |
| | * | |
| | * | 4:11-cv-00419 |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| GIT-N-GO CONVENIENCE STORES, | * | |
| INC., | * | ORDER |
| | * | |
| Defendant. | * | |
| | * | |

Before the Court are the following two summary judgment motions filed by Git-N-Go

Convenience Stores, Inc. ("Defendant" or "GNG"):  (1) Motion for Summary Judgment, filed

June 1, 2012 ("Motion I") (Clerk's No. 27); and (2) Second Motion for Summary Judgment,

filed October 24, 2012 ("Motion II") (Clerk's No. 73).  Terri J. DeWeese ("Plaintiff") resisted

Motion I on September 19, 2012 and Motion II on November 19, 2012.  Clerk's Nos. 51, 83.

Defendant replied on October 12, 2012 and November 29, 2012, respectively.  Clerk's Nos. 65,

85.  The matters are fully submitted.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Since November 4, 2009, Defendant has employed Plaintiff as a store manager at several

of its locations,[1] but currently, she is assigned as a store manager to store number two.  *See* Pl.'s

App. (Clerk's No. 52) at 67 ¶ 3.  As a store manager, Plaintiff makes $545[2] per week and is

---

[1]     Specifically, Plaintiff has been a store manager at store numbers two, three, twenty-seven, and twenty-eight.  *See* Pl.'s App. (Clerk's No. 52) at 67 ¶ 3.

[2]     At some point in time during her employment with GNG, Plaintiff's salary was $500 per week.  *See* Pl.'s App. at 2–3, pp. 7:18–8:16.

expected to work fifty hours per week.[3]  *See id.* at 2, p. 7:23–8:2; 3, p. 10:5–7.  At various times during her employment as a store manager, Plaintiff has been assigned to work as a cashier "on a relief basis" at some of Defendant's other stores.[4]  *See id.* at 67 ¶ 3, 69 ¶ 8; 58:12–17; 59:24–60:1.  While working as a store manager, Plaintiff's usual shift is from 5:30 AM until 4:00 PM and, for the most part, she works by herself.  *Id.* at 68 ¶ 4.

While on duty, Plaintiff is responsible for the completion of a wide variety of tasks. Typically, she waits on customers, runs the register, completes various paperwork, makes coffee, calls in the truck order, puts ice in the soda machine, stocks shelves, prepares bank deposits, ensures the store's cleanliness, completes minor maintenance tasks, and puts away the truck order once or twice per week.  *See* Pl.'s App. at 68 ¶¶ 5–7.  Plaintiff reports that she "spen[ds] the majority of [the] time at any of [her] assigned stores . . . engaged in the non[-]management activities described above."  *Id.* at 69 ¶ 9.  She further claims that her "primary responsibility, both in terms of time spent on it and in importance to [GNG]'s operations, [is] operating the cash register and waiting on customers."  *Id.*  In support of this claim, Plaintiff states that she does not have the authority to perform fundamental management duties, such as hiring or firing

---

[3]     Should Plaintiff work in excess of fifty hours during any given week, she is entitled to choose between:  (1) bonus compensation in the amount of $ 8 per hour for every hour worked over fifty; or (2) extra paid time off equivalent to the number of hours worked over fifty.  *See* Pl.'s App. at 3, pp. 9:13–10:4, 11:9–25.

[4]     While running the cash register at those stores, Plaintiff was under the supervision and authority of the respective permanently assigned store managers.  Pl.'s App. at 60:3–5; 69 ¶ 8; *contra id.* at 4, p. 17:1–17 (John Judge, one of Defendant's store supervisors, stating that "in [his] mind," Plaintiff retained her title and management responsibilities when running the register at other stores).

employees,[5] making personnel decisions,[6] setting the payroll budget,[7] etc., and that almost every

---

[5]     Plaintiff reports that employees at Defendant's corporate office review employment applications and interview potential candidates.  Pl.'s App. at 69 ¶ 10.  Plaintiff does not "pre-screen applicants or attach notes to their application[s]."  *Id.*  Defendant disputes this assertion.  Although Defendant concedes that "store managers do not have ultimate hiring and firing authority," it states that store managers "participate in the hiring, firing, and promotion process[es] by providing recommendations . . . [, which are] given great weight and [are] frequently relied upon."  Def.'s Br. in Supp. of Mot. I ("Def.'s Br. I") at 15; *see* Def.'s App. in Supp. of Its Mot. for Summ. J. ("Def.'s App.") (Clerk's No. 27-3) at 2 ¶¶ 10(b)–(c); 8–9 ¶¶ 12(b)–(e) (asserting that store managers are expected to and do participate in Defendant's employment decisions by providing their input, which is given due consideration); Pl.'s App. at 36, p. 61:7–16 (stating that store managers conduct "a short mini interview . . . [to] gather[] information from the applicant); 46, p. 101:8–25 (admitting that Plaintiff does not have the ultimate authority to hire or fire employees but claiming that she can give her input on these matters).  As an example, Defendant points out that, on at least one occasion, Plaintiff issued several written reprimands to a cashier at her store and subsequently recommended that he be terminated.  *See* Def.'s App. at 41–47; 17, pp. 57:13–58:5; *but see* Pl.'s App. at 70 ¶ 16 (reporting that Defendant did not actually follow her recommendation with respect to this cashier and recounting two additional instances when her "personnel recommendations were ignored").

[6]     Plaintiff asserts that "all employee sick and vacation time" is approved by employees at Defendant's corporate office.  *See* Pl.'s App. at 69 ¶ 11; *contra id.* at 34, pp. 54:24–55:2 (testifying that the store managers have the authority to approve time-off requests).  Additionally, she has "no authority to offer personnel recommendations . . . [or] complete performance reviews."  *Id.*; *see also id.* at 70 ¶ 15 ("I have never given written performance reviews for any employee who has worked at a store with me.").  Plaintiff has also "never been asked for nor given a recommendation or input regarding an employee's pay or the promotion of a cashier or stocker."  *Id.* at 70 ¶ 18; *contra* Def.'s App. at 9 ¶ 12(h) ("[W]hen [Plaintiff] moved to Store 28 from Store 3, [she] recommended a cashier from Store 3 to be promoted to assistant manager and moved to her Store 28, and . . . that employee [was promoted and transferred] as [Plaintiff] recommended."); ¶ 12(e)–(g) (stating that Lanette Butt ("Butt"), a store supervisor, has contacted store managers for "recommendations regarding hiring, firing, or promotions" or when deciding whether to authorize a pay increase for a given employee).  Indeed, Plaintiff states that she can recall only one occasion when her direct supervisor requested her opinion regarding "the potential promotion of an assistant store manager to store manager."  Pl.'s App. at 70 ¶ 18.

[7]     The payroll budget for each store is set by Defendant and distributed to the store managers and their supervisors once a month.  *See* Pl.'s App. at 14, p. 57:2–22.  When completing the employee schedules at their respective stores, store managers cannot exceed the budgeted number of hours for their stores without permission from a store supervisor.  *See id.* at 14, pp. 57:23–58:21; 34, p. 56:19–24.

3

aspect of her work as a store manager is controlled by Defendant's "detailed policies, procedures, and instructions."[8]  *See id.* at 69 ¶¶ 10–12, 71 ¶ 23.

Defendant disagrees, stating that while each of their store managers performs some day-to-day non-management duties, their management functions remain their primary responsibility.[9]  *See* Def.'s App. in Supp. of Its Mot. for Summ. J. ("Def.'s App.") (Clerk's No. 27-3) at 2–4 ¶ 10; 5 ¶ 13; 8–11 ¶ 12; 12 ¶ 17; Pl.'s App. at 50, p. 119:14–19.  These "management functions" include the following:  disciplining employees, pre-screening job applicants, recommending employees for promotions or pay increases, training employees, completing "bookwork," ensuring "the safety and security of company employees and property," tracking sales and inventory, handling customer and employee complaints, "enforcing workplace rules and safety policies," and coordinating store promotions.[10]  Def.'s App. at 2–4 ¶ 10; 8–11 ¶ 12.  Store managers are also responsible for supervising the employees working at their respective stores.[11]

---

[8]     These policies, procedures, and instructions dictate what steps employees should follow in "accept[ing] checks [and] . . . credit cards, . . . complet[ing] daily reports and bookwork, . . . handl[ing] lottery sales, [completing] maintenance [tasks] . . . , merchandi[zing], . . . handl[ing] scheduling and payroll, . . . operat[ing] cash registers, [and] . . . ordering supplies."  Pl.'s App. at 71 ¶ 23.

[9]     Defendants asserts that if a store manager is not performing his or her management responsibilities, then that manager is not fulfilling his or her primary duties.  *See* Def.'s App. at 5 ¶ 11; 12 ¶ 14.  Such failure constitutes grounds for discipline or even termination.  *See id.*; *id.* at 34–39 (documenting formal disciplinary actions against Plaintiff for failing to complete various duties).

[10]    This is not intended to be a complete listing of store managers' management duties, as reported by Defendant.  For a complete list, see Pl.'s App. at 2–4 ¶¶ 10(a)–10(y); 8–11 ¶¶ 12(a)–12(cc); 31–32.

[11]    Defendant reports that the store manager of even "the least-staffed store oversees 84.5 work hours of other employees."  Def.'s Br. I at 13 (citing Def.'s App. at 40).

*See id.* at 2 ¶¶ 7–8; 8 ¶¶ 9–10.  In carrying out their management duties, Defendant's store managers enjoy "little . . . direct supervision" by their respective store supervisors.[12]  *See id.* at 2 ¶ 9; 11 ¶ 13.  Indeed, Defendant states that each store manager is "in charge of all operations on the premises of his or her store."  *Id.* at 5 ¶ 16; 12 ¶ 19.

## II.  STANDARD FOR SUMMARY JUDGMENT

The term "summary judgment" is something of a misnomer.  *See* D. Brock Hornby, *Summary Judgment Without Illusions*, 13 Green Bag 2d 273 (Spring 2010).  It "suggests a judicial process that is simple, abbreviated, and inexpensive," while in reality, the process is complicated, time-consuming, and expensive.[13]  *Id.* at 273, 281.  The complexity of the process, however, reflects the "complexity of law and life."  *Id.* at 281.  "Since the constitutional right to jury trial is at stake," judges must engage in a "paper-intensive and often tedious" process to "assiduously avoid deciding disputed facts or inferences" in a quest to determine whether a record contains genuine factual disputes that necessitate a trial.  *Id.* at 281–82.  Despite the seeming inaptness of the name, and the desire for some in the plaintiffs' bar to be rid of it, the summary judgment process is well-accepted and appears "here to stay."[14]  *Id.* at 281.  Indeed,

---

[12]     John Judge, who supervised Plaintiff for several months, testified in a deposition that "[his] rule of thumb is to be in every store . . . . [a]t least once a week."  Pl.'s App. at 12, p. 51:1–2.  Another store supervisor, Butt, testified during her deposition that she only "occasionally" visited Plaintiff's store, did not exchange emails with her, and that any phone calls between Plaintiff and her were "usually . . . initiated by [Plaintiff]."  *See id.* at 30, pp. 38:13–39:11.

[13]     Indeed, Judge Hornby, a District Court judge for the District of Maine, convincingly suggests that the name "summary judgment" should be changed to "motion for judgment without trial."  13 Green Bag 2d at 284.

[14]     Judge Hornby notes that over seventy years of Supreme Court jurisprudence gives no hint that the summary judgment process is unconstitutional under the Seventh Amendment.  *Id.*

"judges are duty-bound to resolve legal disputes, no matter how close the call." *Id.* at 287.

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." "[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 209 (8th Cir. 1976) (citing *Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 n.5 (8th Cir. 1975)). The purpose of summary judgment is not "to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962) (quoting *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 627 (1944)). Rather, it is designed to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried." *Anderson v. Viking Pump Div., Houdaille Indus., Inc.*, 545 F.2d 1127, 1129 (8th Cir. 1976) (citing *Lyons v. Bd. of Educ.*, 523 F.2d 340, 347 (8th Cir. 1975)). Summary judgment can be entered against a party if that party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment upon

---

at 281 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979) and *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627 (1944)). While he recognizes that not much can be done to reduce the complexity of the summary judgment process, he nonetheless makes a strong case for improvements in it, including, amongst other things, improved terminology and expectations and increased pre-summary judgment court involvement. *See id.* at 283–88.

motion after there has been adequate time for discovery.  Summary judgment is appropriately

granted when the record, viewed in the light most favorable to the nonmoving party and giving

that party the benefit of all reasonable inferences, shows that there is no genuine issue of

material fact, and that the moving party is therefore entitled to judgment as a matter of law.  *See*

Fed. R. Civ. P. 56(a); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994).

The Court does not weigh the evidence, nor does it make credibility determinations.  The Court

only determines whether there are any disputed issues and, if so, whether those issues are both

genuine and material.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Wilson v.*

*Myers*, 823 F.2d 253, 256 (8th Cir. 1987) ("Summary judgment is not designed to weed out

dubious claims, but to eliminate those claims with no basis in material fact.") (citing

*Weightwatchers of Quebec, Ltd. v. Weightwatchers Int'l, Inc.*, 398 F. Supp. 1047, 1055

(E.D.N.Y. 1975)).

In a summary judgment motion, the moving party bears the initial burden of

demonstrating the absence of a genuine issue of material fact based on the pleadings,

depositions, answers to interrogatories, admissions on file, and affidavits, if any.  *See Celotex*,

477 U.S. at 323; *Anderson*, 477 U.S. at 248.  If the moving party has carried its burden, the

nonmoving party must then go beyond its original pleadings and designate specific facts

showing that there remains a genuine issue of material fact that needs to be resolved by a trial.

*See* Fed. R. Civ. P. 56(c).  This additional showing can be by affidavits, depositions, answers to

interrogatories, or the admissions on file.  *Id.*; *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S.

at 257.  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat

a motion for summary judgment; the requirement is that there be no *genuine* issue of *material*

fact." *Anderson*, 477 U.S. at 247–48.  An issue is "genuine" if the evidence is sufficient to

persuade a reasonable jury to return a verdict for the nonmoving party.  *See id.* at 248.  "As to

materiality, the substantive law will identify which facts are material . . . .  Factual disputes that

are irrelevant or unnecessary will not be counted."  *Id.*

Courts do not treat summary judgment as if it were a paper trial.  Therefore, a "district

court's role in deciding the motion is not to sift through the evidence, pondering the nuances and

inconsistencies, and decide whom to believe."  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918,

920 (7th Cir. 1994).  In a motion for summary judgment, the Court's job is only to decide, based

on the evidentiary record that accompanies the moving and resistance filings of the parties,

whether there really is any material dispute of fact that still requires a trial.  *See id.* (citing

*Anderson*, 477 U.S. at 249 and 10 Charles A. Wright & Arthur R. Miller, *Federal Practice &*

*Procedure* § 2712 (3d ed. 1998)).

### III.  LAW AND ANALYSIS

Plaintiff filed this lawsuit, claiming that as a non-exempt employee within the meaning of

applicable Fair Labor Standards Act ("FLSA") provisions, she is entitled to overtime

compensation at a rate of no less than one and a half times her regular rate of pay for all hours

worked in excess of forty in any given week during the three-year period ending with the filing

of this action.  *See* Compl. ¶¶ 7, 9, 13–20.  Defendant disputes that Plaintiff is a non-exempt

employee, and, in support, advances the following three arguments.  First, Defendant claims that

"Plaintiff's position [is] exempt from the . . . overtime pay requirements under . . . the [FLSA] . .

. [because her] position as a store manager qualifie[s] for the executive[15] exemption."  Def.'s Br. in Supp. of Mot. I ("Def.'s Br. I") (Clerk's No. 27-1) at 4.  Second, Defendant contends that Plaintiff's claim for overtime compensation fails as a matter of law because she is employed in a bona fide administrative capacity.  *See* Def.'s Br. in Supp. of Mot. II ("Def.'s Br. II") § II.B. Third, Defendant argues that "the combination exemption . . . makes [Plaintiff's] position exempt."  *Id.* at 9.

As a general rule, the FLSA mandates that employers pay overtime compensation to any employee for all hours in excess of forty that the employee works during any given workweek. 29 U.S.C. § 207(a)(1).  The rate of overtime compensation must be "not less than one and one-half times the regular rate at which [the employee] is employed."  *Id.*  The FLSA's overtime-pay provisions, however, do not apply to "any employee employed in a bona fide executive [or] administrative . . . capacity."  *Id.* § 213(a)(1).  "[T]o further Congress' goal of providing broad federal employment protection," courts construe the executive and administrative exemptions narrowly.  *See Spinden v. GS Roofing Prods. Co.*, 94 F.3d 421, 426 (8th Cir. 1996) (internal citation and quotation marks omitted).  "The burden is on the employer to prove that [either]

---

[15]     In support of its claim that Plaintiff is employed in a bona fide executive capacity, Defendant relies both on the nature of her job duties and on two U.S. Department of Labor ("DOL") investigation reports.  *See* Def.'s Br. I § II.A.v.  Specifically, Defendant argues that "the manager exemption rested at the heart of the agency investigation . . .[, and that] [t]his Court should consider the DOL's classification and treatment of store managers as exempt in making its own assessment."  *Id.* at 18.  After a thorough review of the relevant portions of the summary judgment record, *see* Def.'s App. at 48–55, the Court has determined that it cannot give any weight to the two reports.  Although they both state that the "Part 541.100 exemption"—the executive exemption—applies to Defendant's store managers, neither report includes any information suggesting that the DOL investigated the exemption issue.  Absent such information, the Court simply cannot agree that "the manager exemption rested at the heart of the [DOL] investigation."  *See* Def.'s Br. I at 18.

exemption applies by demonstrating that [its] employees fit plainly and unmistakably within the exemption's terms and spirit." *Id.* (internal citation and quotation marks omitted).

A. *Executive Exemption*

The following four elements must be present for the executive exemption to apply: (1) the employee must make no less than $455 per week;[16] (2) the employee's primary duty must be "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof";[17] (3) the employee must "customarily and regularly direct[] the work of two or more other employees"; and (4) the employee must have "the authority to hire or fire other employees or . . . [make] suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees [that] are given particular weight." 29 C.F.R. § 541.100(a). For reasons that follow, the Court concludes that it cannot hold, as a matter of law, that the executive exemption test is satisfied because there is a genuine issue of material fact with respect to the second and the fourth elements above.

1.   *Plaintiff's primary duty must be management.*

The Code of Federal Regulations defines the term "management" by way of example. The relevant provision reads:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates

---

[16]   Plaintiff concedes that this requirement is met. *See* Pl.'s Mem. of Authorities in Resistance to Mot. I ("Pl.'s Resistance Br. I") (Clerk's No. 51) at 5.

[17]   Plaintiff also concedes that she is employed in "'a customarily recognized department or subdivision' of Defendant." *See* Pl.'s Resistance Br. I at 5. She disputes, however, that her primary duty is management. *See id.*

of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

*Id.* § 541.102. Plaintiff does not dispute that, as a store manager, she performs management functions. *See generally* Pl.'s Mem. of Authorities in Resistance to Mot. I ("Pl.'s Resistance Br. I") (Clerk's No. 51) § II.B. Thus, the relevant inquiry becomes whether these management functions are her primary duty.

"The term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Determin[ing] an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.* Some of the factors to consider when making this determination are:

[(1)] the relative importance of the exempt [management] duties as compared with other types of duties; [(2)] the amount of time spent performing exempt [management] work; [(3)] the employee's relative freedom from direct supervision; and [(4)] the relationship between the employee's salary and the wages paid to other employees for the kind of non[-]exempt [manual] work performed by the employee.

*Id.*

a. *Relative importance of management duties.*

Defendant contends that Plaintiff's performance of her managerial duties is more important to the company than her performance of any non-exempt duties. *See* Def.'s Br. I at 10.

11

Indeed, Defendant points out that Plaintiff's job description includes "a number of managerial responsibilities[, and t]he statement . . . [that] '[e]very store manager is responsible for the proper and efficient operation of his or her store, within company policy, in such a manner as to ensure that the store maintains and increases its profitability.'" *Id.* at 9. Additionally, Defendant argues that even:

> [Plaintiff]'s own testimony demonstrates her understanding that her managerial duties are her primary duties, . . . that spending less time on managerial functions in a particular store does not make those functions any less important[,] . . . [and] that although there may be fluctuations in the time she spends on the different aspects of her job, those fluctuations do not change the importance of her managerial duties.

*Id.* Furthermore, Defendant notes, Plaintiff recognizes that store managers may delegate the performance of their management duties, but remain ultimately responsible for them. *See id.* at 11. Plaintiff disputes Defendant's contentions. Specifically, she argues that "her primary responsibility . . . in terms of . . . importance to Defendant's operations . . . [is] operating the cash register and waiting on customers," which are non-managerial functions. Pl.'s Resistance Br. I at 8.

In determining the relative importance of Plaintiff's managerial duties to Defendant's operations, the Court must answer the following question: "[H]ow long would [Plaintiff's] store successfully last if she only performed managerial duties versus manual labor?" *See Jones v. Dolgencorp, Inc.*, 789 F. Supp. 2d 1090, 1106 (N.D. Iowa 2011). The Court concludes that, for reasons that follow, it cannot answer this question on the basis of the summary judgment record.

There is no dispute that, as a store manager, Plaintiff bears the ultimate responsibility for "the proper and efficient operation of . . . her store . . . in such a manner as to ensure . . . its profitability." Def.'s App. at 31 ¶ 1; *see also id.* at 16, pp. 55:16–56:1. To live up to this

12

responsibility, a store manager must perform a number of exempt, managerial functions, such as "completing . . . cash deposits, daily reports and gas reports," "screening and referring job applicants," "[d]elegating tasks to store staff," "[i]ssuing employee consultations and completing employee evaluations," and "[p]rotecting company assets." *Id.* at 31–32; *see also id.* at 2–4 ¶¶ 10(a)–10(c), 10(g)–10(i), 10(k); 8–11 ¶¶ 12(a)–12(d), 12(k)–12(n).  Briefly stated, the store manager is the person "in charge"[18] of the store.  *See id.* at 5 ¶ 16; 12 ¶ 19.

At the same time, however, the record contains ample evidence that Plaintiff performs a great deal of manual tasks.[19]  In fact, her job description itself requires the completion of the

---

[18]  In *Thomas v. Speedway SuperAmerica, L.L.C.*, 506 F.3d 496 (6th Cir. 2007), the Sixth Circuit Court of Appeals considered and rejected the argument that any employee designated by its employer as "in charge" is a bona fide executive, regardless of the employee's actual duties. *See id.* at 503 ("[T]he words 'in charge' are not a magical incantation that render an employee a bona fide executive regardless of [the employee's] actual duties. . . . [C]ourts cannot rely upon the [employee's] or the employer's description of the [employee's] position or authority; instead we must look at the [employee's] actual duties to determine whether [he or she] qualifies for the executive exemption." (internal citations and quotation marks omitted)).  The Court agrees with the *Thomas* analysis.  Therefore, to the extent that Defendant advances a similar argument in this case, it is rejected.

[19]  Defendant argues, however, that even if Plaintiff spends "the majority of her time performing non-managerial work, the evidence . . . [in the record] clearly establishes . . . [that] she simultaneously performed her management duties."  Def.'s Br. I at 9–10.  Plaintiff disagrees, arguing that the 29 C.F.R. § 541.106 concurrent duties test "is inapplicable . . . because Plaintiff does not concurrently perform her exempt and non[-]exempt duties."  Pl.'s Resistance Br. I at 10.  Section 541.106(a) provides that performing non-exempt work concurrently with exempt work "does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met."  The record in this case contains conflicting evidence on this issue.  For example, on the one hand, Plaintiff testified during her deposition that while on shift, she is "running the register, . . . doing paperwork, [and] taking care of vendors, all at the same time."  Def.'s App. at 26, p. 96:4–6.  On the other hand, the record shows that Defendant considered assisting customers of paramount importance and expected its employees, including store managers, to "[s]top . . . [whatever they are doing, including their management duties] and take care of the customer."  *See* Pl.'s App. at 32, p. 46:12–13; *see generally id.* at 32–33, pp. 46:14–50:18.  Therefore, a reasonable fact-finder viewing the record in the light most favorable to Plaintiff could conclude that she did not concurrently perform exempt and non-exempt duties.

following non-exempt duties: serving customers, working the cash register,[20] keeping the coolers and shelves fully stocked, and cleaning equipment, windows, floors, shelving, counters, and gas pumps. *See* Def.'s App. at 31–32. Store managers also help[21] put away the truck order, stock the ice machines and coolers and make coffee in preparation for store opening, and engage in minor maintenance activities, such as changing light bulbs. *See*  Pl.'s App. at 24, p. 87:4–16; 25, p. 89:21–23; 68 ¶¶ 6–7. Additionally, the Court notes that while on shift as a store manager, Plaintiff works the majority of the time by herself and that at various times she has been assigned to work as a cashier in other stores even though she holds a store manager title. *See id.* at 68 ¶ 4; 69 ¶ 8.

Based on this conflicting information, the Court concludes that a reasonable fact-finder viewing the record in the light most favorable to Plaintiff could conclude that Plaintiff's performance of non-exempt duties was more important to Defendant than her performance of managerial duties. For example, the fact that Plaintiff is required to work fifty hours per week and the amount of time she engages in non-exempt tasks can lead a reasonable fact-finder to conclude that Defendant uses its store managers as a tool to control labor costs. *See Smith v. Heartland Auto. Servs.*, 418 F. Supp. 2d 1129, 1135 (D. Minn. 2006) ("[A] fact-finder could conclude from the evidence that [the defendant] used [the] [p]laintiffs, and their ability to put in hours doing non-exempt tasks without charging the company overtime, as a mechanism through which to control labor costs."). Consequently, the Court finds that a genuine factual dispute

---

[20]   Plaintiff estimates that she spends roughly 90 percent of her time working the cash register. *See* Def.'s App. at 27, p. 97:9–12.

[21]   Actually, Plaintiff reports that she "had no help with the truck order at store number 28 and rarely had help at store number 3." Pl.'s App. at 68 ¶ 6.

exists as to "what [D]efendant truly value[s] in a store manager"—the managerial skills or the ability to put in countless hours of manual labor without adversely affecting the store's payroll budget.  *See Jones*, 789 F. Supp. 2d at 1106.

        b.  *Percentage of time.*

The amount of time that Plaintiff spends performing managerial tasks is not dispositive of the primary duty issue.  *See Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1270 (11th Cir. 2008); 29 C.F.R. § 541.700(b) ("Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work.").  FLSA regulations provide, however, that "[t]he amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee."  *Id.* § 541.700(b).  If Plaintiff spends more than 50 percent of her workday performing managerial duties, then she "will generally satisfy the primary duty requirement."  *Id.*  If she does not, then she may satisfy this requirement "if the other factors support such a conclusion."  *Id.*

Plaintiff estimates that she operates the cash register almost nine hours during her typical ten-hour shift.  *See* Def.'s App. at 27, p. 97:9–11.  In support, she states that "[p]reparation of the reports, paperwork, and truck order takes no more than an hour on any given day and would take less time if [Plaintiff] had help in the store."  Pl.'s App. at 68 ¶ 5.  Some of Plaintiff's other management duties require even less time to complete—filling out store supply orders takes fifteen minutes per week, and completing the store supply sheets takes only two minutes per week. *See id.* at 71 ¶¶ 20–21.  Thus, Plaintiff claims that although she is employed by Defendant

15

as a store manager, "non[-]management activities" consume the vast majority of her time.[22]  *See id.* at 69 ¶ 9.

Defendant disputes Plaintiff's estimate of the amount of time she engages in non-exempt work, but does not proffer a revised estimate.[23]  The substance of Defendant's disagreement is two-fold.  First, Defendant argues that non-managerial duties are always secondary to the managerial duties and that the amount of time spent performing non-managerial tasks does not strip Plaintiff of her store manager title or attendant responsibilities.  *See* Def.'s Resp. to Pl.'s Statement of Additional Facts (Clerk's No. 65-1) ¶¶ 9, 19.  Second, Defendant maintains that Plaintiff could not successfully carry out her responsibilities as a store manager if she indeed "spends 90 percent of her time operating a cash register."  *Id.* ¶ 19.

Based on the record, the Court concludes that there is a genuine dispute with respect to the percentage of time Plaintiff spends performing managerial duties.  *See Jones*, 789 F. Supp. 2d at 1104 ("[T]he amount of time an employee spends working, either on exempt or non-exempt duties, is a question of fact." (internal citations omitted)).

      c.  *Freedom from supervision.*

Defendant claims that store managers are responsible for the daily operations of their stores and enjoy "little day-to-day, direct supervision" by their respective store supervisors.  *See* Def.'s App. at 2 ¶ 9; 11 ¶ 13.  Defendant further asserts that store managers are "in charge of all

---

[22]    The Court notes that Plaintiff's claim finds support in the fact that she works by herself the majority of the time.  *See* Pl.'s App. at 68 ¶ 4; *see also id.* at 33, p. 50:19–24 (Butt stating that, when she was a store manager herself, she often worked alone).

[23]    Indeed, it seems that Defendant has never done an internal survey or study to try and determine what percentage of time its store managers spend engaging in non-exempt activities.  *See* Pl.'s App. at 1, pp. 4:16–5:7; 2, p. 7:3–7; 24, p. 13:13–17.

operations on the premises of [their] store[s]." *Id.* at 5 ¶ 16; 12 ¶ 19.  Plaintiff disagrees, arguing

that store managers are under close supervision by their store supervisors.  *See* Pl.'s Resistance

Br. I § II.B.5.

        The record contains conflicting evidence regarding the extent of supervision.  For

instance, on the one hand, store managers are free to prepare their store work schedules, conduct

preliminary interviews of job applicants, and discipline employees.  On the other hand, they

cannot exceed the labor hours budgeted for their store, and do not have the authority to hire

candidates or terminate their employment.  *See Jones*, 789 F. Supp. 2d at 1108 (denying

summary judgment to the employer and specifically noting, in the context of analyzing the

defendant's level of supervision over the plaintiff, that although the plaintiff supervised the other

store employees and their shifts, she was neither allowed to promote or fire them nor was she

allowed to exceed "the number of labor hours in the budget as dictated by corporate

headquarters"); *Morgan*, 551 F.3d at 1271 (affirming the district court's denial of the employer's

motion for judgment as a matter of law, in part, due to the fact that the "[s]tore managers had

little freedom from direct supervision" because they worked under "fixed payroll budgets[,]

[which] left [them] little choice in how to manage their stores and with the primary duty of

performing manual, not managerial, tasks").  Furthermore, it seems that Defendant's store

supervisors have full discretion as to the amount of supervision they exercise over their assigned

stores.  *Compare* Pl.'s App. at 12, p. 51:1–2 (John Judge testifying that "[his] rule of thumb is to

be in every store . . . . [a]t least once a week") *with id.* at 30, pp. 38:13–39:11 (Lanette Butt

("Butt") testifying that she visited Plaintiff's store "occasionally," did not exchange emails with

her, and any phone calls between them were initiated by Plaintiff).  Therefore, on the basis of

this conflicting evidence, the Court concludes that a genuine factual dispute exists as to the extent of the store managers' freedom from supervision. *See Jones*, 789 F. Supp. 2d at 1109 ("[T]he extent of [the defendants'] direct supervision of [the plaintiff] remains in dispute and [the] defendants are, therefore, not entitled to judgment as a matter of law.").

       d. *Salary and wages*.

Plaintiff argues that "a fact issue about her primary duty exists because she performs the same work as Defendant's non[-]exempt employees but for the same level of pay as those employees." Pl.'s Resistance Br. I at 14. She arrives at this conclusion by converting her salary into an hourly wage[24] and comparing it to the wages earned by stockers,[25] cashiers,[26] and assistant managers.[27] *See id.* Defendant disputes the propriety of reducing Plaintiff's salary to an hourly wage, arguing that FLSA regulations do not make any reference to an effective hourly wage.[28] *See* Def.'s Reply to Pl.'s Resistance to Mot. I (Clerk's No. 65) at 5. Defendant further

---

[24]    Plaintiff's calculations reveal that her pay ranges from $10.00 ($500.00 weekly salary divided by fifty hours) to $10.90 ($545.00 weekly salary divided by fifty hours) per hour or from $8.00 to $10.90 per hour, if she accounts for the bonus compensation received for any hour in excess of fifty that Plaintiff works in any given week. *See* Pl.'s Resistance Br. I at 14. Considering that this additional compensation is termed "bonus compensation," the Court is uncertain whether it is proper to consider it when comparing Plaintiff's salary to the wages paid to non-exempt employees. Therefore, for the purpose of its analysis, the Court will deem Plaintiff's effective hourly wage to be from $10.00 to $10.90 per hour.

[25]    Stockers' wages range from $7.75 to $9.40 per hour. Def.'s Supp. App. in Supp. of Mot. I ("Def.'s Supp. App.") (Clerk's No. 65-3) at 83.

[26]    Cashiers' wages range from $8.00 to $10.80 per hour. Def.'s Supp. App. at 83.

[27]    Assistant managers' wages range from $8.00 to $10.25 per hour. Def.'s Supp. App. at 84.

[28]    Admittedly, the relevant FLSA regulations make no mention of an effective hourly rate. The Court notes, however, that the approach employed by Plaintiff has been endorsed by the

claims that "Plaintiff's total compensation[29] includes not just her salary, but also the benefits only offered to salaried [m]anagers."  *Id.* (citing *Kastor v. Sam's Wholesale Club*, 131 F. Supp. 2d 862, 869 (N.D. Tex. 2001)).

Comparing Plaintiff's effective hourly wage to the wages earned by the non-exempt employees in Defendant's stores yields the following results:  (1) Plaintiff earns $3.15[30] more per hour (approximately 41 percent[31] more) than the lowest-paid stockers in Defendant's stores;[32] (2) Plaintiff earns $2.90[33] more per hour (approximately 36 percent[34] more) than the lowest-paid

_____

Sixth and Eleventh Circuits and by at least one district court in this Circuit.  *See Thomas*, 506 F.3d at 508–09; *Morgan*, 551 F.3d at 1257–58; *Jones*, 789 F. Supp. 2d at 1109–10.  The Court finds this to be a sound approach and, accordingly, follows it.

[29]     The Court recognizes that Defendant's argument finds support in the *Kastor* case, but notes that 29 C.F.R. § 541.700(a) urges courts to consider "the relationship between the employee's *salary*[, not the employee's *total compensation*] and the wages paid to other employees for the kind of non[-]exempt work performed by the employee."  Additionally, the Court notes that Defendant failed to provide any details pertaining to the value of the benefits enjoyed only by its store managers.  *See* Def.'s Supp. App. at 128 ¶ 11 (stating, without assigning any dollar values to these benefits, that store managers are eligible for health, dental, and life insurances, paid holidays, and paid sick time off).  Moreover, it is not clear from the record whether Plaintiff has ever taken advantage of these benefits.  Therefore, in computing Plaintiff's effective hourly wage, the Court only considers the amount of her weekly salary.

[30]     The Court arrives at this figure by subtracting the lowest-paid stockers' wage of $7.75 per hour from Plaintiff's highest effective hourly wage of $10.90 per hour.

[31]     The Court employs the following formula to determine this percentage:  (($10.90-$7.75) / $7.75) x 100.

[32]     Plaintiff, however, earns only $1.50 more per hour (approximately 16 percent more) than the highest-paid stockers in Defendant's stores.

[33]     The Court arrives at this figure by subtracting the lowest-paid cashiers' wage of $8.00 per hour from Plaintiff's highest effective hourly wage of $10.90 per hour.

[34]     The Court employs the following formula to determine this percentage:  (($10.90-$8.00) / $8.00) x 100.

cashiers in Defendant's stores;[35] and (3) Plaintiff earns $2.90[36] more per hour (approximately 36 percent[37] more) than the lowest-paid assistant managers in Defendant's stores.[38]  In *Morgan*, the Eleventh Circuit determined that even a two- or three-dollar-per-hour difference is "relatively small"[39] and that, accordingly, "it was within the jury's province to conclude that this factor either did not weigh in [the employer]'s favor or at least did not outweigh the other factors in [the employee]'s favor."  *Morgan*, 551 F.3d at 1271.  Conversely, in *Thomas*, the Sixth Circuit concluded that the plaintiff's effective hourly wage was "approximately thirty percent [] more than the hourly wages paid to other employees for the kind of nonexempt work performed by [the plaintiff]" and that such a difference "equated to a significant amount."  *Id.* at 509.  Thus, based on the analyses in *Morgan* and *Thomas* and viewing the record in the light most favorable to Plaintiff, the Court finds that a reasonable fact-finder "could conclude either way:  that [Plaintiff] did or did not earn 'substantially more' than other employees."  *See Jones*, 789 F. Supp. 2d at 1110.

---

[35]    Plaintiff, however, earns only $0.10 more per hour (approximately 1 percent more) than the highest-paid cashiers in Defendant's stores.

[36]    The Court arrives at this figure by subtracting the lowest-paid assistant managers' wage of $8.00 per hour from Plaintiff's highest effective hourly wage of $10.90 per hour.

[37]    The Court employs the following formula to determine this percentage:  (($10.90-$8.00) / $8.00) x 100.

[38]    Plaintiff, however, earns only $0.65 more per hour (approximately 6 percent more) than the highest-paid assistant managers in Defendant's stores.

[39]    In making this determination, the Eleventh Circuit compared the assistant store managers' average hourly wages (ranging from $7.11 to $8.18) for the period of 1999 to 2005 with the store managers' average effective hourly wages (ranging from $7.47 to $11.77) for the same period.  *See Morgan*, 551 F.3d at 1258 n.33.

Based on the analysis above, the Court finds that Defendant has failed to establish the absence of any genuine issues of material fact regarding the primary duty element of the executive exemption test.

2.   *Plaintiff's suggestions and recommendations regarding proposed personnel actions must carry "particular weight."*

Having concluded that there is a genuine issue of material fact as to whether Plaintiff's primary duty is management, the Court need not analyze the remaining two elements of the executive exemption test.  The Court notes, however, that Defendant has failed to demonstrate the absence of any factual dispute regarding the fourth requirement of the executive exemption test, i.e. that the employee must have "the authority to hire or fire other employees or . . . [make] suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees [that] are given particular weight."  *See* 29 C.F.R. § 541.100(a).  "To determine whether an employee's suggestions and recommendations are given 'particular weight,'" the Court must consider the following non-exhaustive list of factors:  "[(1)] whether it is part of the employee's job duties to make such suggestions and recommendations; [(2)] the frequency with which such suggestions and recommendations are made or requested; and [(3)] the frequency with which the employee's suggestions and recommendations are relied upon."  *Id.* § 541.105.

Defendant concedes that store managers do not have the authority to hire or fire anyone, but states that they participate in the hiring, firing, and promotion processes by providing recommendations that carry particular weight and are often relied on.  *See* Def.'s Br. I at 15; Def.'s App. at 2 ¶¶ 10(b)–(c) (John Judge stating that store managers' participation and input in

the hiring, firing, and promotion processes are greatly valued and frequently relied on); 8–9 ¶¶ 12(b)–(g) (Butt stating that store managers are specifically instructed to and that they do actively participate in the hiring, firing, and promotion processes, as well as in decisions concerning employees' annual pay increases); Pl.'s App. at 36, p. 61:7–16 (Butt stating that store managers conduct initial interviews to "gather[] information from the applicant[s]" and that the type of questions asked during these interviews is up to the individual manager).  Plaintiff, however, disputes this assertion.  *See* Pl.'s App. at 70 ¶ 16 ("I disagree with [Defendant] that it gives my input and recommendations, to the extent I give any, any degree of importance or [that it] frequently relies on them."); 69 ¶ 11 (Plaintiff stating that she has no authority to make personnel recommendations); 70 ¶ 18 (Plaintiff stating that she has never given any recommendations concerning an employee's pay or the promotion of a cashier or stocker and that she recalls only one occasion when her store supervisor requested her input regarding the promotion of an assistant manager to a store manager).  Therefore, the Court concludes that there are genuine issues of material fact with respect to both the extent of the store managers' participation in Defendant's hiring, firing, advancement, and promotion decisions and the weight that Defendant assigns to such participation.

Accordingly, for the reasons articulated in §§ III.A.1 and III.A.2 of this Order, the Court concludes that it cannot hold, as a matter of law, that Plaintiff is exempt from the FLSA's overtime pay provisions as an "employee employed in a bona fide executive . . . capacity."  *See* 29 U.S.C. § 213(a)(1).

## B.  *Administrative Exemption*

The following three factors trigger the administrative exemption:  (1) the employee's

22

salary is no less than $455 per week[40]; (2) the employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a).  As with the executive exemption, the Court concludes that it cannot hold, as a matter of law, that the administrative exemption test is satisfied because a factual dispute exists as to whether Plaintiff's primary duty is performing "work directly related to the management or general business operations of the employer or the employer's customers."  *See id.*

FLSA regulations define "work directly related to the management or general business operations" as:

> includ[ing], but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b).  Plaintiff admits that she performs at least some of the work encompassed by these categories.[41]  *See* Pl.'s Mem. of Authorities in Resp. to Mot. II ("Pl.'s Resistance Br. II") (Clerk's No. 83) at 6.  Thus, the relevant question becomes whether

---

[40]    Plaintiff concedes that this requirement is met.  *See supra* n.16.

[41]    At the same time, however, Plaintiff states that she "does not perform 'office or non-manual work directly related to the management or general business operations of' Defendant or Defendant's customers."  Pl.'s Mem. of Authorities in Resp. to Mot. II (Clerk's No. 83) at 6. Thus, it is somewhat unclear whether Plaintiff claims that she performs some or no amount of such work.  For the purpose of this Order, the Court will assume the former.

23

performing such work is her primary duty.

> The following factors guide the Court's inquiry:
>
> [(1)] the relative importance of the exempt [administrative] duties as compared with other types of duties; [(2)] the amount of time spent performing exempt [administrative] work; [(3)] the employee's relative freedom from direct supervision; and [(4)] the relationship between the employee's salary and the wages paid to other employees for the kind of non[-]exempt [manual] work performed by the employee.

*Id.* § 541.700(a).  Notably, courts consider these same factors when determining if an employee's primary duty is management under the executive exemption test.  *Compare id.* § 541.100(b) ("The phrase . . . 'primary duty' is defined at § 541.700 . . . .") *with id.* § 541.200(b) ("The term . . . 'primary duty' is defined at § 541.700."); *see also supra* § III.A.1.  The similarities between Defendant's executive and administrative exemption arguments do not end here, however.  Defendant's argument that Plaintiff is employed in a bona fide administrative capacity is based on the exact same set of facts as its argument that she is employed in a bona fide executive capacity.  *Compare* Def.'s Br. I at 6–8 *with* Def.'s Br. II at 5–7.  Thus, since the underlying facts and applicable law are the same, the Court's conclusion that there is a genuine factual dispute regarding the primary duty element of the executive exemption test applies with equal strength to the administrative exemption test.  Accordingly, the Court concludes that it cannot hold as a matter of law that Plaintiff is exempt from the FLSA's overtime pay provisions as an "employee employed in a bona fide administrative . . . capacity."  *See* 29 U.S.C. § 213(a)(1).

## C. *Combination Exemption*

This exemption provides a mechanism for blending different exempt duties for the purpose of satisfying the primary duty test.  *See Auer v. Robbins*, 65 F.3d 702, 722 (8th Cir.

1995); 29 C.F.R. § 541.708 ("Thus, for example, an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption."). When combining different exempt duties, however, the employer is required to prove the remaining elements of each exemption used.  *See IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 293–95 (4th Cir. 2007) (discussing two possible interpretations of § 541.708—the combination exemption provision—and deferring to the Secretary of Labor's interpretation that the exemption does not "relieve employers of their burden to independently establish the other requirements of *each exemption whose duties are combined*" (emphasis added)); *Smith v. Frac Tech Servs., L.L.C.*, No. 4:09CV00679, 2011 U.S. Dist. LEXIS 3165, at *109 (E.D. Ark. Jan. 11, 2011) (endorsing *IntraComm*'s interpretation of § 541.708).  Thus, assuming, *arguendo*, that the use of the combination exemption in this case yields the desired result, Defendant must still independently establish *each* remaining element of both the executive and the administrative exemptions.  The Court has already determined, however, that there is a genuine issue of material fact regarding the fourth element of the executive exemption test.  *See supra* § III.A.2. Therefore, the Court cannot conclude as a matter of law that Plaintiff is exempt from the overtime pay provisions of the FLSA.

## IV.  CONCLUSION

For the foregoing reasons, Motions I and II (Clerk's Nos. 27, 73) are both DENIED.

IT IS SO ORDERED.

Dated this ___1st___ day of February, 2013.

_____

ROBERT W. PRATT

U.S. DISTRICT JUDGE