IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| TERRI J. DEWEESE, | * | |
| | * | 4:11-cv-00419 |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| GIT-N-GO CONVENIENCE STORES, INC., | * | |
| | * | |
| | * | ORDER |
| Defendant. | * | |
| | * | |

Before the Court is Terri J. DeWeese's ("DeWeese" or "Plaintiff") Motion for Final FLSA[1] Collective Action Certification ("Motion"), filed June 17, 2013. Clerk's No. 95. Git-N-Go Convenience Stores, Inc. ("Git-N-Go" or "Defendant") filed a timely response on June 24, 2014. Clerk's No. 124. The Motion is fully submitted.[2]

I.  FACTUAL AND PROCEDURAL BACKGROUND

The central allegation in this lawsuit is that Git-N-Go improperly classified all of its store managers as employees who were exempt from the overtime pay provisions of the FLSA. On June 18, 2012, the Court granted DeWeese's Motion for Conditional Class Certification. *See* Clerk's No. 36. Following that Order, forty-one current or former store managers opted in to the lawsuit, and the parties engaged in discovery. *See* Clerk's No. 121 ¶¶ 4–8. Eighteen of the opt-

---

[1]    The abbreviation "FLSA" used throughout this Order stands for the Fair Labor Standards Act.  *See* 29 U.S.C. § 201 *et seq.*

[2]    In the majority of cases, the final certification issue is raised by the defendant in a motion seeking to decertify the conditionally certified FLSA collective class. In this case, however, the issue was brought up by DeWeese, the named Plaintiff. Despite being somewhat unusual for the named plaintiff in an FLSA collective action lawsuit to bring up the final certification issue, the Court is aware of no legal authority prohibiting such practice.

in Plaintiffs, however, disobeyed the Court's discovery orders, and were, accordingly, dismissed from the lawsuit. *See id.* ¶¶ 10, 12–13; *see also* Clerk's No. 125. An additional opt-in Plaintiff requested that she be dismissed from the lawsuit. *See* Clerk's No. 121 ¶ 11; *see also* Clerk's No. 125. Thus, the case proceeds with DeWeese and twenty-two opt-in Plaintiffs.

## II.  LAW AND ANALYSIS

### A.  *Final Certification Standard*

To avoid decertification of the conditionally certified class, Plaintiffs must demonstrate "that they are similarly situated with respect to their job requirements and pay provisions." *See Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 892 (N.D. Iowa 2008); *accord Andersen v. Wells Fargo Fin., Inc.*, No. 4:11-cv-00085, 2012 U.S. Dist. LEXIS 23175, at *7 (S.D. Iowa 2012) ("[T]he burden rests with the plaintiffs to show that 'other employees [are] similarly situated.'" (internal citation omitted)). Even though Plaintiffs' burden at this final stage is more onerous than at the notice stage, there is no requirement that Plaintiffs be "identically situated." *See Bouaphakeo*, 564 F. Supp. 2d at 892. In deciding whether they are similarly situated, this Court must analyze the following three factors: "[(1)] the employment and factual settings of [P]laintiffs; (2) the various defenses available to [D]efendant[]; and (3) considerations of fairness, procedure, and manageability." *See id.* (internal citations omitted). Importantly, the Court should evaluate these factors in light of "the fundamental purpose[s] of 29 U.S.C. § 216(b) . . . to lower costs to the plaintiffs through the pooling of resources and . . . to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." *See id.* at 892–93 (internal citation and quotation marks omitted).

Additionally, the Court should be mindful that the FLSA "is a remedial statute that has been construed liberally to apply to the furthest reaches consistent with congressional direction." *See Kelly v. Alamo*, 964 F.2d 747, 749–50 (8th Cir. 1992) (internal citation and quotation marks omitted). A district court's decertification decision will not be disturbed absent an abuse of discretion.[3] *See Frye v. Baptist Mem. Hosp., Inc.*, No. 11-5648, 2012 U.S. App. LEXIS 17791, at *6 (6th Cir. Aug. 21, 2012) (citing *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. 2009)); *Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 534 (3d Cir. 2012); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (applying an abuse of discretion standard in a collective action filed under the Age Discrimination in Employment Act, "which expressly borrows the opt-in class action mechanism of the [FLSA]"). In other words, the district court's decision will stand, so long as the court did not apply an incorrect legal standard, make clearly erroneous findings of fact, or misapply law to fact. *See Zavala*, 691 F.3d at 534.

B. *Analysis*

Git-N-Go asserts that the collective class should be decertified because "discovery . . . established that the members of the class are not 'similarly situated' for purposes of an FLSA action." *See* Def.'s Resistance to Pl.'s Mot. ("Def.'s Resistance Br.") (Clerk's No. 124) at 16. In support, Git-N-Go recounts in detail Plaintiffs' discovery responses and highlights the fact that, in some cases, there is a great disparity in the amount of time that various Plaintiffs devote to a given job responsibility. *See id.* at 16–34. Because of these variations and because of the

---

[3] The Eighth Circuit has not yet made a pronouncement as to the appropriate standard of review in this regard. The Court, however, adopts the abuse of discretion standard used by several other Circuits.

existence of individualized defenses, Git-N-Go contends that Plaintiffs are not similarly situated. *See id.* at 34. For reasons that follow, the Court is not persuaded. Indeed, as explained below, Plaintiffs have presented ample evidence that is common to the entire class, and the Court, accordingly, concludes that their misclassification claims are suitable for collective adjudication.

        1.      *Similar employment and factual settings.*

The following three types of evidence demonstrate that DeWeese and the opt-in Plaintiffs are similarly situated in terms of their employment and factual settings: job duties and responsibilities, number of hours worked each week, and Git-N-Go's internal practices. The Court will examine each one of them in turn.

        a. *Similar job duties.*

On its face, the store manager job description contains a comprehensive listing of both the managerial and the non-managerial duties and responsibilities assigned to all Git-N-Go store managers. *See* Pls.' Ex. 2 (Clerk's No. 95-3) at 1–2. There is no doubt that this job description evidences "the uniform scope of duties and responsibilities of all . . . [Git-N-Go] store managers, and a factual demonstration that every . . . [Git-N-Go] store manager . . . [is] expected to perform these duties." *See Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1019 (D. Minn. 2007).[4] Although the amount of time devoted to carrying out any given store manager duty varies by location and by store manager, *see generally* Def.'s Exs. A & B (Clerk's Nos. 126, 126-2), Plaintiffs do not differ from one another in terms of the scope and the type of their job responsibilities, *see* Pls.' Ex. 4 (Aff. of Linette Butt ("Butt")) (Clerk's No. 95-5) ¶¶ 12(a)–(cc)

---

[4] The citations to *Nerland* used in this Order are to the magistrate judge's Report and Recommendation, which was adopted by the district court judge assigned to the case.

(Butt listing out the primary management duties of Git-N-Go store managers and stating that "despite the variance in some daily activities or time spent on those duties, the . . . primary management functions expected of each and every [s]tore [m]anager [are the same]"); Pls.' Ex. 6 (Aff. of John Judge ("Judge")) (Clerk's No. 95-7) ¶¶ 10(a)–(y) (same). Indeed, Git-N-Go does not argue that Plaintiffs are dissimilar because they were assigned different job duties; rather, it asserts that their misclassification claims are not suitable for collective examination because the time they devoted to their duties varied. *See* Def.'s Resistance Br. at 16–34. What matters to the similarly situated inquiry, however, is the fact that the Git-N-Go store manager job description is applied uniformly to all store managers, which is evidence that there are no significant variations in job duties and responsibilities among Plaintiffs. *See Nerland*, 564 F. Supp. 2d at 1021. Furthermore, Git-N-Go's contention that Plaintiffs' claims cannot be adjudicated collectively because the amount of time spent performing various store manager duties differs by location and/or by store manager is not persuasive because Git-N-Go did not conduct a survey to determine how its store managers spent their time and because despite these variations, Git-N-Go nevertheless concluded that all of its store managers were exempt from overtime pay.[5] *See Morgan*, 551 F.3d at 1264 n.46. For these reasons, the Git-N-Go store manager job description

---

[5] To be fair, not only did the amount of time devoted to various store manager duties differ by location and/or by store manager, but some Plaintiffs stated that they did not actually spend any time performing certain job duties. *See, e.g.*, Def.'s Ex. A (Clerk's No. 126) at 6 (Plaintiff Marianne Brown stating that she spent no time evaluating employee performance or placing inventory orders), 12 (Plaintiff Steven Craven stating that he spent zero hours evaluating employee performance and reviewing or preparing sales records, inventory records, and bank records), 16 (Plaintiff Amanda Graham stating that she never evaluated employee performance, reviewed or prepared sales records, inventory records, and bank records, or placed inventory orders). The Court concludes, however, that this evidence is not sufficient to defeat Plaintiffs' argument that they are similarly situated.

represents evidence common to all Plaintiffs and is "proper generalized evidence suitable for a jury to consider in collectively examining . . . [P]laintiffs' misclassification claims." *See Nerland*, 564 F. Supp. 2d at 1021.

      b. *Hours worked each week.*

The record contains evidence that DeWeese and opt-in Plaintiffs are also similarly situated in regards to the hours worked each week. There is sufficient evidence that Git-N-Go store managers worked in excess of forty hours each week. *See* Pls.' Ex. 3 (Clerk's No. 95-4) at 11–12 (DeWeese Dep. at 52:4–53:1) (DeWeese testifying that the store managers' schedule contemplated that they work five ten-hour days each week); Pls.' Ex. 5 (Clerk's No. 95-6) at 3 (Butt Dep. at 10:7–11:12) (Butt testifying that sometimes store managers work in excess of ten hours per day); Pls.' Ex. 7 (Clerk's No. 95-8) at 3 (Judge Dep. at 9:3–11:14) (Judge testifying that whenever store managers exceeded the fifty hours per week that they were required to be present at their respective stores, they had a choice between being paid $8.00 per hour for every hour worked over fifty hours or accruing paid time off). This uniformity in the store managers' work hours is another piece of evidence demonstrating the similarity between DeWeese and opt-in Plaintiffs, and, thus, favoring the conclusion that Plaintiffs' FLSA misclassification claims can be adjudicated collectively.

      c. *Git-N-Go's internal practices.*

Git-N-Go's policy of classifying all of its store managers as exempt employees also demonstrates that DeWeese and opt-in Plaintiffs are similarly situated. *See* Pls.' Ex. 7 (Clerk's No. 95-8) at 2 (Judge Dep. at 5:14–6:24) (Judge testifying that all Git-N-Go store managers have been classified as exempt since 1991, regardless of their respective stores' locations, staffing

levels, or customer volume). Indeed, Git-N-Go has never evaluated each individual store's circumstances to determine the propriety of classifying that store's manager as exempt from the FLSA's overtime pay provisions. *See id.* at 2 (Judge Dep. at 5:5–7, 7:3–7) (Judge testifying that Git-N-Go has never performed any survey to try and determine whether the store managers' job duties qualified them as exempt employees, nor has Git-N-Go ever considered that some of its store managers may not qualify as such employees). Therefore, the Court finds that Git-N-Go has an internal policy of treating all of its store managers as similarly situated for purposes of classifying them as exempt from overtime pay. Having such uniform practice "significantly lessens any concerns about variations in [P]laintiffs' employment circumstances." *See Nerland*, 564 F. Supp. 2d at 1024. Moreover, "[t]he Court finds it disingenuous for . . . [Git-N-Go] . . . to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, [and, at the same time,] . . . claim[] . . . [P]laintiffs cannot proceed collectively to challenge the exemption." *See id.*

    2.    *Individualized defenses.*

Git-N-Go also argues that the class should be decertified because "Git[-]N[-]Go will be raising several affirmative defenses of a particularized nature against . . . Plaintiffs, which will require an individualized analysis." Def.'s Resistance Br. at 34. A review of these "defenses of particularized nature" reveals that they relate mainly to the issue of damages, i.e., how much overtime compensation is due to each individual Plaintiff in the event that Git-N-Go is found liable. *See id.* at 35 (Git-N-Go stating that it would assert, among others, the following affirmative defenses: "some or all of the activities for which some of the opt-in Plaintiffs seek compensation may not constitute 'work' or were not compensable activities under the . . .

[FLSA] and/or the Portal-to-Portal Pay Act . . .; some or all of the time for which some of the opt-in Plaintiffs seek compensation is *de minimis*; some of the opt-in Plaintiffs may have been fully paid for the work they performed; some of the opt-in Plaintiffs' claims may barred and/or reduced, to the extent they have failed to mitigate damages; if any of the opt-in Plaintiffs' positions were covered by the FLSA overtime compensation provisions, any damages award must be offset by any amounts Defendant paid or overpaid Plaintiffs, including any amounts paid to Plaintiffs under the fluctuating workweeks provisions of the FLSA; [and] some of the opt-in Plaintiffs' claims are barred, to the extent they did not work more than 40 hours in any given workweek"). "These damages issues do not preclude the collective adjudication of the exemption issue at the center of this action . . . . There [is] . . . sufficient generalized and representative evidence regarding . . . [Git-N-Go] store managers' factual and employment setting for a jury to decide this central issue." *See Nerland*, 564 F. Supp. 2d at 1025. To the extent that these damage determinations may hamper the collective adjudication of Plaintiffs' misclassification claims, such difficulties can be eliminated by bifurcating the trial into a liability phase and a damages stage. *See id.* (concluding that bifurcation would "promote the manageability of the collective action" by eliminating the presentation of any particularized damages evidence during the liability phase of the trial). Even assuming, however, that the individualized affirmative defenses did not relate primarily to the issue of damages, the Court would still conclude that the collective examination of Plaintiffs' claims is appropriate because "[P]laintiffs share common job traits." *See Morgan*, 551 F.3d at 1263 (concluding that the collective adjudication of the plaintiffs' misclassification claims was appropriate despite the fact that the executive exemption defense necessitated a fact-intensive inquiry).

3.  *Fairness and procedural considerations.*

Git-N-Go does not address this third factor of the similarly situated analysis. *See generally* Def.'s Resistance Br. Nevertheless, the Court notes that the collective treatment of Plaintiffs' misclassification claims in this case comports with the FLSA's purpose—to permit the adjudication of their individual claims through the pooling of resources and, thus, reducing the litigation costs to each individual Plaintiff. *See Nerland*, 564 F. Supp. 2d at 1025 (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). Indeed, for many plaintiffs asserting misclassification claims under the FLSA, a collective action lawsuit "is the only practical method of adjudicating their FLSA claims." *See id.* Furthermore, the collective treatment of Plaintiffs' claims would conserve judicial resources and promote efficiency. Accordingly, the Court concludes that this factor counsels against decertification of the FLSA collective class in this case.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion (Clerk's No. 95) is GRANTED.

IT IS SO ORDERED.

Dated this ___21st___ day of August, 2014.

_____
ROBERT W. PRATT
U.S. DISTRICT JUDGE